IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MESHA C., | ) | |
| | ) | No. 21 C 6451 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Mesha C. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

### Background

On August 15, 2019, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 17-26, 73-115.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform ("RFC") her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of April 30, 2012. (R. 19.) At step two, the ALJ found that plaintiff had the severe impairment of bipolar disorder. (R. 20.) At step three, the ALJ found that plaintiff does not have an impairment or a combination of impairments that meets or medically equals a listed impairment. (*Id.*) At step four, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform the full range of work at all exertional levels with certain non-exertional limitations. (R. 21-24.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 25-26.)

Plaintiff argues that the ALJ failed to assess properly the opinion of treating physician Dr. Lieteau. Among other things, Dr. Lieteau said that plaintiff has severe problems with mood dysregulation, she is very irritable, argumentative, has explosive outbursts, crying spells, and poor concentration. (R. 1103.) Dr. Lieteau also said that plaintiff has extreme limitations in maintaining social functioning and will have four or more episodes of decompensation in a twelve-month period. (R. 1105.) The ALJ said Dr. Lieteau's opinions were not persuasive because they were inconsistent with her own treatment records, which "note that [plaintiff] is improving" and "do[] not document 'three or more' episodes of decompensation." (R. 24.)

Plaintiff says the ALJ's analysis of Dr. Lieteau's opinions falls short because (1) it does not adequately address the consistency and supportability factors set forth in the regulations; (2) it is based on cherry-picked evidence; and (3) there is no logical bridge between the evidence and the ALJ's conclusion. *See* 20 C.F.R § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be.").

As to consistency and supportability, the ALJ properly applied the adjusted regulations for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (applicable for claims filed after March 27, 2017); (*see also* R. 23-24). Under the applicable regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). While the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. *Compare* 20 C.F.R. § 404.1527(c)(2), *with* 20 C.F.R. § 404.1520c(a)-(b). In assessing medical opinions, the ALJ must consider the following five factors: (1) supportability; (2)

3

consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c). The ALJ applied these factors, properly focusing on supportability and consistency (*see* 20 C.F.R §404.1520c(b)(2)), and gave controlling weight to the reconsideration opinion of the State agency's psychological expert, finding that opinion "persuasive, as it is well supported by the consultative examination findings that the claimant was alert, coherent and able to persist with intact judgment. The opinion is also consistent with the overall conservative mental health treatment of record, including medication management." (R. 24.) The ALJ went on to explain his reasons for not giving the same weight to other medical evidence presented, considering appropriate regulatory factors in the process. (*Id.*)

As to cherry-picking, the ALJ reviewed Dr. Lieteau's records and said they generally showed improvement or that plaintiff functioned at a higher level than the doctor endorsed. (R. 22-23.) As plaintiff notes, Dr. Lieteau's records are not unequivocally positive. But the ALJ evaluated all of them, positive and negative alike, and the Court will not substitute its judgment for that of the ALJ.[1] *Gedatus*, 994 F.3d at 900 (stating that a court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it").

As to a lack of logical bridge, this Court's ability to identify the ALJ's reasoning for his conclusions, including citation to the record and analysis of the consideration given to the evidence presented, proves that argument to be without merit.

---

[1] The ALJ's review of Dr, Lieteau's records does not "cherry pick" at all. Indeed, the ALJ notes plaintiff's improvements, and setbacks, positive test results and negative clinical observations, plaintiff's lack of medication and therapy, and her need to increase medication. (R. 22-23.)

**Conclusion**

For the reasons set forth above, the Court grants the Acting Commissioner's motion for summary judgment [17], affirms the Acting Commissioner's decision, and terminates this case.

**SO ORDERED.**                      **ENTERED: March 28, 2023**

**M. David Weisman**
**United States Magistrate Judge**